IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 8:22-CR-00091-PX-1 |
| | ) | |
| AKBAR MASOOD, *ET AL.* | ) | |

**MOTION TO SUPPRESS**

Mr. AKBAR MASOOD, pursuant to Fed. R. Crim. P. 12(b), respectfully moves this Court to suppress any and all evidence obtained by the Government as a result of the execution of the warrants authorizing searches of his residence and his business location.

**I.   Introduction**

   **a.   Relevant Procedural History**

On April 4, 2022, the investigating agents applied for, and obtained, two search warrants, one to search a location in Great Falls, Virginia (Target Premise 1), and a second to search a location in Reston, Virginia (Target Premise 2). Specifically, Target Premise 1 is Mr. Masood's residence, and Target Premise 2 is the office location of Case Healthcare Solutions, Inc. ("Case"), a company that Mr. Masood and other individuals created. Notably, the affiant used the same affidavit to support both warrant applications.

   **b.   Summary of the Argument**

Mr. Masood moves this Court to suppress any and all evidence

1

obtained as a result of the searches of his residence and Case's office and the fruits thereof, (*see Wong Sun v. United States*, 371 U.S. 471 (1963)), as they were obtained in violation of his constitutional rights guaranteed by the Fourth Amendment because (1) the affidavits in support of the application of the search warrants failed to establish the requisite nexus between the offenses and the electronic data to be searched, and (2) the search warrants are overly broad and tantamount to constitutionally defective general warrants.

## II.     Argument and Citation of Authority

### a.     The affidavits failed to establish the requisite nexus between the offenses and the target premises.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Stated another way, the Fourth Amendment requires that a warrant (1) be supported by probable cause; (2) particularly describe the place to be searched and the things to be seized; and, (3) be issued by a neutral, disinterested magistrate. *Dalia v. United States*, 441 U.S. 238, 255 (1979) (internal quotations and citations omitted). If a warrant is invalid, the proper remedy in a criminal action is "ordinarily" to suppress the evidence derived from it. *United States v. Thomas*, 908 F.3d 68, 72 (4th Cir. 2018).

In determining whether a search warrant is supported by probable cause, the crucial element is not whether the target of the search is suspected

2

of a crime, but whether it is reasonable to believe that the items to be seized will be found in the place to be searched. *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 n.6 (1978). To be valid, a warrant affidavit must establish a sufficient nexus between the place to be searched and the suspected criminal activity. *United States v. Allen*, 631 F.3d 164, 173 (4th Cir. 2011).

In the Fourth and other Circuits, where no evidence connects the criminal activity to the residence, the courts have found the warrant defective. *See e.g., United States v. Lalor*, 996 F.2d 1578 (4th Cir. 1993) (search warrant for defendant's residence was invalid due to lack of nexus between alleged drug activity and defendant's residence; search warrant affidavit did not describe circumstances indicating likelihood of evidence of drug activity at defendant's residence and did not explain geographic relationship between alleged drug sales and residence); *United States v. Ramos*, 923 F.2d 1346, 1352 (9th Cir. 1991) (finding no probable cause where surveillance did not lead to facts making it likely that items officers sought were located in apartment).

Here, at no point in the affidavit did the agent establish a nexus between the offenses and Mr. Masood's residence. While the affidavit seems lengthy and detailed, it is devoid of any basis from which the magistrate could infer that evidence of health care fraud would be found at Mr. Masood's home.

Specifically, the affiant stated the following facts regarding Mr. Masood's residence which only established legitimate events, as opposed to

3

any criminal activities. Such legitimate events included Mr. Masood's having been served in a separate civil action (*see* Ex. A, Aff. at 7); that the real property tax records indicated he owns the house and is married to Ms. Filza Akbar (*id*.); that surveillance of the residence identified vehicles registered to Ms. Akbar (*id*.); that Ms. Akbar was observed taking a child to bus and then returned to the residence (*id*. at 8); an adult male was also observed driving from the residence but could not be positively identified (*id*.); Mr. Masood's driver's license and other documents reflected that Target Premise 1 is his residence (*id*.); that Mr. Masood received an email notification from FedEx regarding delivery of a package at his residence (*id*.); and that a TD Bank account jointly owned by Mr. Masood and Ms. Jackson listed addresses including Mr. Masood's home address (*id*.), etc.

      The affidavit also includes a section titled as "cause to believe evidence is located in the target locations," which again failed to establish the requisite nexus to Mr. Masood's residence. This section primarily focused on that the address of HMA Solutions LLC ("HMA") is a UPS store and that TD Bank's records back from February 6, 2017, showed that HMA was "home based." (*Id*. at 8.) Thus, the affiant speculated that "[t]he lack of a physical address for HMA would require PEEBLES, JACKSON, and MASOOD to use electronic devices in their possession to create fraudulent documents and emails and send emails and invoices to perpetuate the fraud." (*Id*. at 21.) However, the affiant's speculation is too logically flawed to establish the requisite nexus

4

with Mr. Masood's home. As the affiant himself explicitly wrote, the three co-defendants, "Masood, Peebles, and Jackson committed the target offenses" (*id.* at 10); thus, the affiant should have provided more particularized factual basis such as certain HMA emails were sent from or received by an IP address associated with Mr. Masood's house. However, the affiant completely failed to do so. In fact, the affidavit does not even mention the most basic basis for the search—that electronic devices were observed being used at Mr. Masood's residence.

As such, there is no doubt that the affidavit fell short of establishing the required nexus between the health care fraud offenses and Mr. Masood's residence.

> **b.    The search warrants were overly-broad and tantamount of constitutionally-defective general warrants.**

The Fourth Amendment requires that a search warrant "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "It is familiar history that indiscriminate searches and seizures conducted under the authority of 'general warrants' were the immediate evils that motivated the framing and adoption of the Fourth Amendment." *Payton v. New York*, 445 U.S. 573, 583 (1980) (footnote omitted).

It is well established that search warrants are fundamentally offensive to the underlying principles of the Fourth Amendment when they are so bountiful and expansive in their language that they constitute a virtual, all-

5

encompassing dragnet of personal papers and property to be seized at the discretion of the State. *See Stanford v. State of Tex.*, 379 U.S. 476, 481 (1965) (the Fourth Amendment "reflect[s] the determination of those who wrote the Bill of Rights that the people of this new Nation should forever 'be secure in their persons, houses, papers, and effects' from intrusion and seizure by officers acting under the unbridled authority of a general warrant") (internal quotation marks omitted). The Fourth Amendment requires search warrants to state with reasonable particularity what items are being targeted for search or, alternatively, what criminal activity is suspected of having been perpetrated. *Marron v. United States*, 275 U.S. 192, 196 (1927). "Otherwise, the officers charged with executing the search are left to speculate as to what is the underlying purpose or nature of the search." *United States v. Bridges*, 344 F.3d 1010, 1017 (2003). "The executing officers must be able to identify from the face of the warrant, as well as any attached or expressly incorporated documents, what it is that they are being asked to search for and seize from the target property." *Id*.

The Fourth Circuit has emphasized that a warrant must be "no broader than the probable cause on which it is based." *United States v. Hurwitz*, 459 F.3d 463, 473 (4th Cir. 2006) (quoting *United States v. Zimmerman*, 277 F.3d 426, 432 (3d Cir. 2002)).

A warrant must also be sufficiently "particular[ ]." *Hurwitz*, 459 F.3d at 470. Thus, a warrant must "confine the executing [officers'] discretion by

6

allowing them to seize only evidence of a particular crime." *United States v. Cobb*, 970 F.3d 319, 328 (4th Cir. 2020), as amended (Aug. 17, 2020) (quoting *United States v. Fawole*, 785 F.2d 1141, 1144 (4th Cir. 1986)). The warrant must therefore "identif[y] the items to be seized by their relation to designated crimes," and the "description of the items [must] leave[ ] nothing to the discretion of the officer executing the warrant." *United States v. Williams*, 592 F.3d 511, 519 (4th Cir. 2010) (citation omitted). "So long as the warrant describes the items to be seized with enough specificity that the executing officer is able to distinguish between those items which are to be seized and those that are not . . . the particularity standard is met." *United States v. Blakeney*, 949 F.3d 851, 862 (4th Cir. 2020) (internal citations and quotations omitted).

Here, Mr. Masood submits that the search warrants regarding his residence and business location were overly broad and tantamount to constitutionally defective general warrants, as demonstrated by the expansive and open-ended language used in the search warrants to describe its purpose and scope.

Specifically, Attachment B to the warrant applications, titled as "property to be searched," contains, *inter alia*, the following identical list of items to be searched:

> All data and records, whether in physical format or electronic, related to the ownership, control, history, users, usage, operation, internet protocols, passwords, user accounts, use

> instructions, electronic logs, search history, browser history, access history, and other related data that could be used to identify activity on an electronic device and assist in identifying the user of the particular device;
>
> * * *
>
> contextual information necessary to understand the evidence described in this attachment.

*See* Ex. A, Aff. at 45, 48. The affiant explicitly wrote in the Affidavit that

> As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when.

*Id*. at 26.

The above specified list is so expansive that its language authorizes the Government to seize almost every bit of data stored in any electronic devices found in Mr. Masood's residence and business office, including private information of his family members. The list is a comprehensive laundry list of almost every aspect of an individual's privacy that one would readily expect to discover in an electronic devices that most people would possess in this digital era. For example, this sweeping list includes "all data and records" concerning "search history, browser history, access history, and other related data." *See* Ex. A, Aff. at 45. By incorporating such over broad language, the warrants delineate no clear material limitation or boundary as to its scope. In no way should such a tenuous restraint justify such a strip search of and deep invasion into one's data privacy, including sensitive data such as one's medical, financial data stored in his electronic devices and applications. *Riley*

8

*v. California*, 573 U.S. 373, 397 (2014). Indeed, the particularity requirement is more stringently applied in cases where, like here, involving the seizure of books, documents, personal papers or other items (such as electronic data) with First Amendment value. *Stanford v. Texas*, 379 U.S. 476 (1965).

The wording of these warrants is unquestionably broad in terms of describing what items the federal agents are being asked to seize. Thus, the scope of such warrants is not limited to the specific records enumerated in the list, it is unclear what is its precise scope or what exactly it is that the agents are expected to be looking for during the search.

Moreover, the affiant also outrageously sought to compel any unspecified person's biometric features, under a mere "reasonable suspicion" standard, in order to unlock electronic devices, in violation of the Fifth Amendment's guarantee of rights against self incrimination and due process:

> The search warrants I am applying for would permit law enforcement to compel the use of a person(s) biometric features, acting as soon as reasonably practical in the immediate vicinity of the person(s) or premises to be searched, as to such person(s) who at time of the compulsion law enforcement has ***reasonable suspicion*** to believe is or are the person(s) who have committed the criminal acts that are the subject matter of the search warrants, and as to whom there is *reasonable suspicion* that such person(s) biometric features will unlock the device(s) subject to seizure pursuant to this search warrants using the device's biometric feature.

*Id*. at 26 (emphases added).

As such, the search warrants are overly broad and tantamount to constitutionally defective general warrants. Consequently, the search results

and any fruits thereof must be suppressed. *Wong Sun, supra.*

### c.     The Good-Faith doctrine doe not apply.

In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court considered "[w]hether the Fourth Amendment exclusionary rule should be modified so as not to bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." The Court concluded that since an officer's reliance on the magistrate judge's probable cause determination must be objectively reasonable, in some circumstances the officer would have no reasonable grounds for believing that the warrant was properly issued. The Court outlined several contexts in which suppression remains an appropriate remedy:

> Nor would an officer manifest objective good faith in relying on a warrant based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable' (citations omitted). Finally, depending on the circumstances of the particular case, a warrant may be so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.

468 U.S. at 923 (citations omitted).

Here, as demonstrated herein above, the warrants contained expansive, open-ended, overreaching languages; and the affidavits lacked the requisite nexus between the criminal activities and the places to be searched. On its face the warrants authorized a limitless search of "all data and records"

concerning "search history, browser history, access history, and other related data," as well as a person's biometric features, under a mere "reasonable suspicion" standard. *See* Ex. A, Aff. at 45, 26. Thus, the warrants and affidavits are "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923. As a result, were this Court to determine that the warrants are constitutionally defective, the sanction of suppression cannot be saved by the good-faith exception.

### III.     Conclusion

Based on the foregoing reasons and authorities, Mr. Masood respectfully moves this Court to suppress any and all evidence seized from his residence and business office.

Date:         December 4, 2023

Respectfully Submitted,

***s/ Joshua Sabert Lowther, Esq.***
Joshua Sabert Lowther, Esq.
Ga. Bar # 460398
jlowther@lowtherwalker.com

Lowther | Walker LLC
101 Marietta St., NW, Ste. 3650
Atlanta, GA 30303
404.496.4052
www.lowtherwalker.com

Attorney for Defendant
Akbar Masood

11