

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Southern Division*

---

*Darren S. Gardner*  *Mailing Address:*  *Office Location:*  DIRECT: 301-344-4029
*Assistant United States Attorney*  *6500 Cherrywood Lane, Suite 200*  *6406 Ivy Lane, 8th Floor*  MAIN: 301-344-4433
*Darren.Gardner@usdoj.gov*  *Greenbelt, MD 20770-1249*  *Greenbelt, MD 20770-1249*  FAX: 301-344-4516

August 22, 2024

<u>Via ECF</u>

The Honorable Paula Xinis
United States District Judge
District of Maryland
6500 Cherrywood Lane
Greenbelt, Maryland 20770

Re:   *United States v. Akbar Masood*
<u>Criminal No. PX-22-91</u>
Pretrial Conference Update

Dear Judge Xinis:

As ordered by the Court, we are writing regarding the matters raised at the status conference held on August 22, 2024. More specifically, this response addresses the outstanding motions filed by the Defendant and questions related to the chain of custody of various devices seized from Defendants. The Government now provides the following response:

- Government response to ECF 241: Motion to Compel And For An Evidentiary Hearing Regarding the Government's Failure to Produce Discovery, Jencks, and Exculpatory Evidence

During the status conference that was held on the record on August 22, 2024, the issue of data seized from cell phones and other devices was discussed. Based on our review of the records available to us, this is a chronology of the acquisition and analysis of that information:

Various locations were searched for documents and electronic devices pursuant to a search warrant in April 2022. A filter team was established, led by an AUSA in the Baltimore Office of the U.S. Attorney's Office for the District of Maryland. On June 23, 2022, a filter team is established consisting of a representative from the Navy, Army, and DCIS related to the documents seized from the Defendant's home. The devices spent a significant amount of time with the Army CID cyber team as they attempted to "crack" the passwords to gain access. Eventually AUSA Ake went directly to the defense attorneys and requested the passwords. Defendants provided the passwords while maintaining their rights to challenge the search. On August 21, 2022, at least one defendant declined to waive privilege. The files from each Defendant's devices were returned to their respective owners (Discovery 1).

The devices were eventually successfully imaged and uploaded to Relativity where a taint review began and was completed on November 20, 2023. Counsel for the Government, Adam Ake reviewed the documents and determined there was no Brady material and concluded that none of the material would be used in the prosecution. At this point, it appears that the focus of the case shifted to plea offers or other resolutions to the case. Pleas were submitted and were being negotiated with all defendants, including Mr. Masood, and no further discovery inquiries were made in this case by defense counsel and no further efforts to follow up on the evidence that was being analyzed.

This chronology differs from the information provided to the Court during the conference call on August 22, 2024. On that call, the Government represented that the devices were not reviewed by the Government and were returned to their respective owners, and that only emails from a Google search warrant were reviewed by the filter team. This was erroneous.

Upon closer review and after conference with prior counsel, relevant agents and staff within the U.S. Attorney's Office and the Department of Defense, counsel for the Government determined that a filter review did take place and was in fact completed on all items seized. In particular, counsel for the Government contacted a data specialist who had set up the database where the documents were reviewed and spoke with AUSA Ake who recalled, after reviewing past emails, that the devices were searched and no material that would constitute Brady material was found. Additionally, no information the Government intended or intends to use at trial against any of the Defendants was found.

- Government's Response to ECF 135: Motion to Dismiss

First, the motion to dismiss must be denied as moot. The motion was aimed at the initial indictment. A superseding indictment has now been filed, thereby rendering the motion to dismiss moot. See United States v. Nkongho, 2021 WL 4421883 (D. Md. Sept. 27, 2021) (Hazel, J.) ("Since the filing of this Motion, the Government has filed a Third Superseding Indictment, which renders the Motion to Dismiss the Second Superseding Indictment moot."); cf. Fawzy v. Wauquiez Boats SNC, 873 F.3d 451, 455 (4th Cir. 2017) (filing of amended complaint moots motion to dismiss earlier complaint).

Second, even if not moot, the motion fails because it improperly attempts to import the holding of Dubin v. United States, 599 U.S. 110 (2023)—which concerned the elements for aggravated identity theft in violation of 18 U.S.C. § 1028A—into the elements required for conviction for health care fraud conspiracy, in violation of 18 U.S.C. § 1349. The reasoning of Dubin itself refutes such mixing of metaphors; the Supreme Court made clear that its analysis as to 1028A was context-specific to that statute. There is no basis to expand its holding to the health care fraud conspiracy statute. See United States v. Powers, 108 F.4th 973 (7th Cir. 2024) (rejecting argument that Dubin implicated the "during and in relation to" element for violation of 18 U.S.C. § 924(c)).

Third, even if considered on the merits, the defendant's arguments fail because Count One of the superseding indictment clearly and plainly alleges an offense under 18 U.S.C. § 1343. Nothing more is required. See Fed. R. Crim. P. 7(c)(1).

Fourth, the defendant is wrong to alleged that Count One charges multiple conspiracies; it alleged a single conspiracy and therefore is not duplicitous.

- Application of United States v. Dubin, 143 S. Ct. 1557 (2023)

In Dubin, the Supreme Court held that the words "use" and "in relation to" under Section 1028A should not be read so broadly that the statute would "apply automatically any time a name of other means of identification happens to be part of the payment or billing method used in the commission of a long list of predicate offenses. Dubin at 1564-65.

As an initial matter, this issue is properly addressed as a Rule 29 issue and not as a Rule 12 motion. The evidence to be presented at trial will show that the identities of the victims were central to the alleged fraud very similarly to the cases cited below. Rule 12 only requires the Government to plead the charge with sufficient particularity at the pre-trial stage, which the Government has done.[1]

Post Dubin, multiple courts have applied that case to circumstances similar to the instant case. For example:

- United States v. O'Lear, 90 F.4th 519 (6th Cir. 2024) ("Nevertheless, Dubin does O'Lear no good on the merits. Like the provider's use of a patient's name in Dubin, O'Lear argues that his use of his patients' identities when filing fraudulent healthcare claims was "ancillary" to (not the "crux" of) his fraud. Appellant's Letter 1. But he misrepresents his aggravated-identity-theft convictions. Unlike in Dubin, the government did not charge O'Lear with stealing the patients' identities. It alleged that he forged the signatures of a physician and an x-ray technician to make it appear as if these individuals had ordered or conducted the x-rays he billed for. In other words, O'Lear used the identities of these professionals in a "deceptive" way that went to the "crux" of his scheme to bill for fictitious

---

[1] See United States v. Wilson Daniel Freita DA Costa, 2024 U.S. Dist. LEXIS 105336 (S.D.N.Y. June 13, 2024) ("Counts Two and Three each asserts that Da Costa "knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person . . . in relation to the wire fraud violation charged in Count One of this Indictment." (Indictment ¶¶ 2-3.) Counts Two and Three assert that Da Costa used the names of specific government officials from Country-1 in relation to the wire fraud charged in Count One. (Id.) Count Four uses similar verbiage as to the name and title of an officer of a company ("Company-2") in relation to the wire fraud charged in Count One. (Id. ¶ 4.) The text of the Indictment describes conduct that, facially, could make acts of identity theft the crux of the charged offenses. It would be premature at this stage to adjudicate whether the alleged acts [*10] of identity theft were the "crux" of the charged offenses or "merely an ancillary feature." Dubin, 599 U.S. at 114. The motion to dismiss Counts Two through Four based on the holding of Dubin will be denied."); United States v. Watson, 2024 U.S. Dist. LEXIS 77873 (E.D.N.Y. Apr. 29, 2024) ("Watson argues that the facts set out in the indictment do not meet this standard. He also contends that the indictment alleges no circumstances that could elevate the charge to "aggravated" identity theft, as generally "an aggravated offense is one made worse or more serious by circumstances such as violence, the presence of a deadly weapon, or the intent to commit another crime." Watson Mem. 20 (quoting Dubin, 599 U.S. at 123-24). Again, however, these assertions speak to the sufficiency of the government's proof, which is properly reserved for a trial jury.")

x-rays. Dubin, 599 U.S. at 132. Dubin thus supports his aggravated-identity-theft convictions.")

- United States v. Conley, 89 F.4th 815 (10th Cir. 2023) ("First, since Dubin, the Supreme Court has not applied its crux test or provided further guidance on how to do so. And the facts in Dubin differ significantly from those here. 599 U.S. at 114. Mr. Dubin treated the patients that he named in his reimbursement requests, changing only the amount [**17] of the reimbursement. Id. The Court relied on the distinction between "how and when services were provided . . . [and] who received the services." Id. at 132. [*826] By contrast, Ms. Conley falsified both the substance of the lien releases and who had authored them."

- United States v. De Los Santos, 2024 WL 3041944 (2d Cir. June 18, 2024) ("Second, the jury heard testimony from three victims who were impacted by the scheme and De Los Santos's participation in it. One victim testified that De Los Santos was personally added as an authorized user on his account [*6] and fraudulently obtained cellphones in his name. . . . . Even if this argument was not waived, it would still fail. As stated above, a person's personal identification had to be used in order to access a person's account to add an authorized user, who was thus enabled to fraudulently obtain a phone using matching identification. Therefore, the misuse of another person's means of identification was "at the crux" of the fraud here because the very nature of the scheme required the use of a person's identification. Dubin, 599 U.S. at 114.")

- United States v. Avenatti, 2024 U.S. App. LEXIS 5381 (2d Cir. Mar. 6, 2024) ("In Dubin, the "crux" of the criminal conduct did not involve identity theft. Id. at 114. Here, by contrast, identity theft was an essential part of Avenatti's criminal conduct. Avenatti initially sought to divert money from his client without forging her signature, but his client's literary agent refused to allow the diversion unless the client authorized it. See App'x 103-04. Only then did Avenatti instruct an employee to forge his client's signature for the purpose of wrongfully obtaining [*12] her money. Id. at 168-69, 818-19. Identity theft played a key role in Avenatti's crime; it was not impermissibly "ancillary." Dubin, 599 U.S. at 114. For that reason, Dubin does not require vacating Avenatti's conviction.")

- Altenberg v. United States, 2024 WL 2187486, 2024 U.S. Dist. LEXIS 85533 (D. Me. 2024) ("Petitioner cannot overcome the procedural default and his claim would fail on the merits because Petitioner's conduct is within the [*11] interpretation the Supreme Court adopted in Dubin.3 Petitioner's email containing the director's name and email address was at the crux of the fraudulent transaction on July 3, 2019. That is, Petitioner's email did not address real services rendered while misrepresenting "how" or "when" the services were provided to or by the director. Rather,

4

      Petitioner misrepresented "who" authored the email to mislead another employee about "who" authorized the $24,500 transfer.")

- United States v. Felch, 2024 U.S. Dist. LEXIS 16474 (D.N.M. 2024) ("Ms. Felch's use of her employer's means of identification [*8] "is distinct from the conduct at issue in Dubin, where the defendant misrepresented only the qualifications of the professional who performed psychological testing on a patient to increase the reimbursement from Medicaid." Gladden, 78 F.4th at 1245. In contrast, Ms. Felch's use of her employer's identity "was central to the deception: she used their 'means of identification itself to defraud or deceive." Id. at 1245-46. The bank would not have transferred the funds to Ms. Felch's credit card company "had they known that [her employer] had not actually authorized the [check]." Id. at 1246. "By explicitly using [her employer's] identity to falsely represent to [the bank] that the [check was] authorized," Ms. Felch "appropriated [her employer's] personal information to deceive others." Id. Thus, because her employer's "signature on the [check] directly enabled" Ms. Felch to transfer funds from her employer's bank account to her credit card company, "the means of identification specifically was a key mover in the criminality." Id.  Ms. Felch's arguments to the contrary are unavailing. First, Ms. Felch argues that, because she did not "steal her employer's identity" and "never represented by use of her employer's name or signature that she was [*9] her employer, but rather, "[a]t all times relevant to the bank fraud [] operated only under her own identity," no aggravated identity theft occurred. Doc. 32 at 10 (emphasis in original). "But Dubin did not hold that the defendant in that case was innocent of aggravated identity theft because he did not present himself to be someone else. Rather, it held that when a predicate felony involving 'fraud and deceit crimes' hinges on how and when services were provided to a patient, not who received the services, it cannot sustain an aggravated identity theft conviction." Croft, 87 F.4th at 648. Thus, after Dubin, § 1028A's "reach is [] limited to situations where a 'genuine nexus exists between the use of a means of identification and the predicate offense." Gladden, 78 F.4th at 1244.")

5

- Government's response to ECF 136: Motion to Suppress

This motion should be denied as moot.  The Government will not use any files from the execution of this warrant at trial, whether physical or electronic.

Regards,

Erek L. Barron
United States Attorney


BY: _____/s/_____

Darren S. Gardner
Ranganath Manthripragada
Assistant United States Attorneys