

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Southern Division*

*Darren S. Gardner*  *Mailing Address:*  *Office Location:*  DIRECT: 301-344-4029
*Assistant United States Attorney*  *6500 Cherrywood Lane, Suite 200*  *6406 Ivy Lane, 8th Floor*  MAIN: 301-344-4433
*Darren.Gardner@usdoj.gov*  *Greenbelt, MD 20770-1249*  *Greenbelt, MD 20770-1249*  FAX: 301-344-4516

August 28, 2024

The Honorable Paula Xinis
United States District Judge
District of Maryland
6500 Cherrywood Lane
Greenbelt, Maryland 20770

Re:   *United States v. Akbar Masood*
       Criminal No. PX-22-91
       Letter re: Production Status

Dear Judge Xinis:

On August 28, 2024, the Court ordered the Government to produce various documents, including chain of custody documents related to numerous devices, correspondence from the Government (including emails) memorializing the Government's discovery productions, and any evidence concerning the Government's efforts to comply with *Brady v. Maryland*, the Due Process Protection Act and Federal Rule of Criminal Procedure 5(f).  ECF 264.  The Government has endeavored to produce all such evidence based on its understanding of what the Court has requested.

The Government has also continued to respond to the ongoing defense production requests which have been articulated as relevant based on their alleged theory of the case.  However, the defense had noted in their filing at ECF 241 (filed August 20, 2024) and ECF 261 (filed August 27, 2024) that they believe several items are missing.  The Government now memorializes the status of each of these requests:

- The defense stated in ECF 261 at 7 that *"the government has failed to produce a report on its interview of Mr. Clezie."*

  This is not accurate.  Mr. Clezie was interviewed along with Barbara Rosas telephonically and one report was generated.  The report was provided to the Defendant on August 16, 2024, as part of the Government's Jencks production and the file title reflected both of the witnesses' names.

- The defense stated in ECF 261 that *"it appears that the government has not produced any of the executed contracts at issue even though it has had access to them, and possibly also possession, custody, and/or control of them, for years."*

This is also not accurate. These contracts were produced in materials identified as Discovery 4 on August 21, 2024 in 05. Folder 1. The Bates stamps for these documents begin at USA_013852.

- The defense stated in ECF 261 at 7 that the government *"Has failed to fulfill its Giglio obligations as to Ms. Jackson and Ms. Peebles: Whereas it represented that it has produced the only Giglio documents for them, it has not produced Ms. Jackson's tax returns or information about Ms. Peeble's bank fraud."*

    The Government has inquired with the Internal Revenue Service ("IRS") agents about Ms. Jackson's tax returns. These documents were never provided to the U.S. Attorney's Office. The IRS declined to pursue the matter and, after consulting with their legal counsel, has determined that they do not have current authority to provide Ms. Jackson's tax returns given that they do not have an active investigation. The IRS advised that these documents can only be obtained via court order, which based on undersigned counsel's experience takes many months for the IRS to process. IRS agents further advised on August 28, 2024, that their agency's policy prohibits them from communicating further about this case.

    The Government has disclosed significant information regarding Ms. Peebles' bank fraud, including documents memorializing her various interviews and proffers, her written plea agreement materials (in which she admits to that conduct), as well as all subpoena returns which would contain banking information relevant to Ms. Peebles. The Government is unaware of any other such information but will continue to investigate and provide any additional documents identified by the Government and/or specifically requested by the Defendant.

- The defense stated in ECF 241 at 14 that *"Michele Peebles' statement of facts reflects that Peebles secretly opened a bank account in her ex-boyfriend's name, used the account, and saddled him with tax liability on $245,000 of income resulting in a tax loss to the US of at least $135,000 . . . yet it appears, as if by magic, in the stipulation of facts, with no investigative reports or other supporting documents reflecting the government's discovery of this crime."*

    The IRS agents declined to pursue a tax investigation into Ms. Peebles. As a result, no formal reports or documentation related to Ms. Peebles' tax loss were prepared by the IRS. However, the parties were able to estimate and agree on the calculated losses, as memorialized in Ms. Peebles' stipulation of facts attached to Ms. Peebles' plea agreement.

**Motion to Compel, ECF 262**

Additionally, the defense filed a motion, ECF 262, requesting access to a Power Point presentation that Agent Joshua Kimrey forwarded to another individual related to this investigation. The defense argues that the slides constitute Agent Kimrey's Jencks materials. This is not true. The slides in question were drafted by someone other than Agent Kimrey before this case was accepted by the U.S. Attorney's Office. The defense argues that Agent Kimrey characterization of the Power Point presentation as "good" constitutes his adoption of the entire

Power Point presentation as his own statements when he forwards it to another employee within his office. ECF 262 at 2. That is not the law. For a witness to have adopted a statement such that it becomes the witness' own Jencks requires much more.

For example, when an Agent takes notes of a witness' statements during an interview, the notes do not become the witness' adopted Jencks unless the agent actually reads back what he wrote to the witness and the witness expressly adopts it. See United States v. Roseboro, 87 F.3d 642, 645 (4th Cir. 1996). Without that evidence, a report does not become the witness' Jencks. Id. "To adopt a statement under the Jencks Act, on the other hand, a witness must read the entire statement and formally approve the statement. Otherwise, the witness could be impeached with a statement to which he did not agree." United States v. Beckford, 962 F. Supp. 780, 796 (E.D. Va. 1997). That plainly did not happen here.

The Government has reviewed this document, which was prepared as a summary of the case until that point for the purpose of presenting the case to prosecutors. The Government's position is that it does not contain material that would qualify as impeachment material for Agent Kimrey or exculpatory information regarding Mr. Masood, and it is therefore not Giglio or Brady material. The Government has suggested an *in camera* inspection by the Court to resolve the matter.

**Authority Regarding Locked Devices**

The Government returned two devices, without inspecting them, to their owners because the owners could not provide their passwords. Agents advised AUSA Ake that cracking the devices without passwords could take years. The Government's position is that it does not have an affirmative obligation to continue to attempt to break into devices which it currently cannot access, and keeping those devices solely for the purpose of potentially gaining access eventually would have raised its own legal issues. The Government presents the following for the Court's consideration:

- United States v. Case, No. 1:19-CR-00360-BLW-2, 2020 WL 4227554, at *3 (D. Idaho July 23, 2020), aff'd, 851 F. App'x 105 (9th Cir. 2021): "[T]he Government was not obligated to disclose the FBI's possession of the cellphone or produce its contents to the defense. Because the phone was password-protected, the Government did not have access to the records the Defendant seeks. The Government could not suppress evidence they did not have access to."

- United States v. Young, No. 23-CR-208 (MJD/ECW), 2024 WL 913308, at *4 (D. Minn. Mar. 4, 2024), report and recommendation adopted, No. CR 23-0208 (MJD/ECW), 2024 WL 2292263 (D. Minn. May 21, 2024): "While the physical cellphone is the Government's possession by virtue of a warrant, the data it contains is not in the Government's possession because the cellphone is encrypted, Young has refused to provide his passcode, and the Government has not been able to break the encryption. Consequently, the data on the cellphone do not fall within the scope of Rule 16(a)(1)(E). Similarly, there is no obligation under Brady requiring the Government to discover information not in its possession."

The Government is prepared to further brief this issue as directed by the Court.

                                                     Respectfully submitted,

                                                   Erek L. Barron
                                                   United States Attorney

                                                 _____/s/_____
                                                 Darren S. Gardner
                                                 Ranganath Manthripragada
                                                 Assistant United States Attorneys