# Exhibit 2

```
 1                IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF MARYLAND
 2

 3

 4   UNITED STATES OF AMERICA         *    UNITED STATES

 5        vs.                         *    GRAND JURY

 6   AKBAR MASOOD                     *    PROCEEDINGS
     (2021R00335)
 7                                    *
                    *  *  *  *  *  *  *  *  *  *  *  *  *
 8

 9                      July Term 2024

10                      United States Federal Courthouse
                        6500 Cherrywood Lane, Rm. 280-A
11                      Greenbelt, Maryland  20770
                        Thursday, December 19, 2024, 1:43 p.m.
12

13

14

15         WITNESS:   JOSHUA KIMREY

16

17

18         APPEARANCE:   DARREN GARDNER
                         Assistant United States Attorney
19

20

21

22

23

24   DIGITALLY REPORTED BY:

25   BRADLEY WEIRICH, Grand Jury Court Reporter

                    FREE STATE REPORTING, INC.
                  Court Reporting  Transcription
                     D.C. Area 301-261-1902
                   Balt. & Annap. 410-974-0947
```

1                          E X H I B I T S

2   Exhibit No.        Description                            Marked

3       1        Indictment comparison                           6

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                     P R O C E E D I N G S
 2    (Whereupon
 3                         JOSHUA KIMREY
 4    was called as a witness and, after first being duly sworn
 5    by the Foreperson of the Grand Jury, was examined and
 6    testified as follows:)
 7                          EXAMINATION
 8            BY MR. GARDNER:
 9       Q.   Good afternoon, Agent Kimrey.
10       A.   Good afternoon.
11       Q.   Could you please state and spell your name for the
12    record?
13       A.   Sure.  My name is Joshua, Joshua Kimrey.  J-o-s-h
14    K-i-m-r-e-y.
15       Q.   And where do you currently work?
16       A.   I work for the Department of the Army.  I'm a
17    criminal investigator, located at Fort Belvoir, Virginia.
18       Q.   And how long have you been in that position?
19       A.   Let's see.  Since January 2020 is when I became
20    over to fraud, our Fraud Field Office with NCID.
21       Q.   And let me ask about some of your responsibilities
22    and duties.  Presumably they deal with things that touch the
23    Army in some way?
24       A.   Correct.
25       Q.   Okay.  Can you explain, like, the kind of cases
```

1  you do and then what you do on those cases?
2      A.   Sure. At Fraud Field Office our purview is in
3  general procurement fraud, major procurement fraud where the
4  Army is a victim.
5      Q.   And then criminal fraud, can you explain what that
6  means a little more?
7      A.   So, like, I'll give you an example. Like a
8  contract with the government to construct a building. So if
9  the Army wants a building located on Belvoir, there's a
10 contract and money involved in -- construction is built. We
11 get involved if there is a complaint of fraud. So product
12 substitution, things along those nature.
13     Q.   And where was the first -- what has been your role
14 in this investigation into Mr. Akbar Masood?
15     A.   Sure. This was actually my very first case
16 assigned when I became to the Fraud Field Office back in
17 January 2020. I became the primary case agent at that
18 point.
19     Q.   And can you discuss the, like, the timeframe of
20 this investigation; when it started and where we are now?
21     A.   Yeah. Let's see. My predecessor was Agent Tina
22 Heart (ph.). So she had the case from Army CID. I think
23 she started on it in late 2018, November or December 2018.
24 She had the case for about a year-and-a-half until she
25 transferred it over to me.

1        Q.   And have you -- you've testified twice before,
2   related to this case, correct?
3        A.   A few times.  From my memory I'm not sure the
4   exact amount.  Two or three times.  Yeah.
5        Q.   That's fair.  And during those times I think we --
6   there was two different indictments that you discussed with
7   me and another AUSA, correct?
8        A.   Correct.
9        Q.   So that would be a first indictment that included
10  many defendants, correct?
11       A.   Correct.
12       Q.   And then we ended up superseding as it relates
13  only to Mr. Akbar Masood, correct?
14       A.   Correct.
15       Q.   And do you remember during that conversation we
16  went through the various charges, and the elements of those
17  charges, and basically the investigation that you had done
18  to create evidence that supported those charges?
19       A.   I do.
20       Q.   All right.  So those are already available to the
21  grand jury in the form of their own memory, their own notes,
22  and obviously the transcripts we have here.  But what I'm
23  going to ask you is now about the changes that we're making
24  from that first superseding indictment to this second
25  superseding indictment.  And to do that I'm going to put

1  Grand Jury Exhibit 1 on the overhead.
2          (Grand Jury Exhibit 1 marked for identification.)
3          BY MR. GARDNER:
4     Q.   And what Grand Jury 1 is, is a comparison of
5  superseding indictment -- sorry, the superseding indictment
6  and the second superseding indictment just using, like, a
7  track change function.  So the first substantive -- well let
8  me back up.  Have you reviewed the second superseding
9  indictment in this case?
10    A.   I have.
11    Q.   And as you reviewed it, was everything true and
12 accurate to the best of your knowledge?
13    A.   Yes.
14    Q.   Focusing on Paragraph 1, which looks like it was a
15 new paragraph, which is what the underlining signifies.  Let
16 me first ask a general question.  What is the DHA, or
17 Defense Health Agency?
18    A.   Sure.  So within the government there are
19 different departments, the Department of Justice, Department
20 of Energy, and Department of Defense, which is what I work
21 under.  There's different subdepartments under that, which
22 include the Department of Health Agency.  They are
23 responsible for managing, you know, military treatment
24 facilities such as Walter Reed or some of the larger medical
25 treatment facilities.

1  Q. And did it also manage the Tricare Program, which
2  is the health benefit program that most service members fall
3  under?
4  A. They do, yes.
5  Q. And it looks like Paragraph 1 is -- just basically
6  says -- basically states the role of DHA; is that correct?
7  A. Yes.
8  Q. Turing to Paragraph 2, which is also a newly
9  inserted paragraph that discusses Walter Reed. And it
10 basically says Walter Reed is a medical facility in
11 Bethesda, Maryland that provides medical services, basically
12 to former and current military and their families. Is that
13 basically what Walter Reed is --
14 A. It is, yes.
15 Q. -- to your knowledge?
16 A. Yes.
17 Q. Now Paragraph 3 defines both of those as
18 healthcare benefit programs under a certain statute. And
19 then turning to Paragraph 4. It discusses what clinical
20 documentation informational specialists are. In your own
21 words and from your own knowledge from this case, what is a
22 clinical documentation information specialist, or CDI
23 specialist?
24 A. Sure CDI medical coding services specialist, they
25 are basically experts, individuals in the medical coding

1  field that are responsible for -- you know, they have a load
2  of experience that requires more certificates.  And they
3  have to be -- it's more mentoring doctors, reviewing medical
4  records, ensuring their accurate for whatever treatment was
5  provided, also coaching doctors and nurses.  So doctors can
6  come back or nurses can come back into a particular record
7  just to educate themselves on what was -- what occurred at
8  that point and also educate themselves on how to, you know,
9  treat any future patients.
10       Q.   And can that be both in person and remote?
11       A.   It can, yes.
12       Q.   So as I understand it, CDI coders have ways that
13  they can use a portal or notes on a -- in a medical record
14  to leave messages for the doctor, which that doctor can then
15  respond to.  Is that also your understanding?
16       A.   It is.
17       Q.   And is that understanding basically what's
18  reflected in Paragraph 4 of the new indictment?
19       A.   Yes.
20       Q.   Now there are several, I would say, non-
21  substantive changes in Paragraph 5.  But it does include a
22  statement that the medical support services that were
23  provided by Company A were included -- I'm sorry, included
24  CDI medical coding services.
25            I'm going to turn to Page 3 now of the indictment.

FREE STATE REPORTING, INC.
Court Reporting  Transcription
D.C. Area 301-261-1902
Balt. & Annap. 410-974-0947

1   And it simply adds the statement that Company A
2   subcontracted with HMA to provide CDI medical coding
3   services for Walter Reed under its broader contract with
4   Walter Reed.
5           Let's see.  Is there anything in these changes,
6   and I will continue going, but up until this point, is there
7   anything in these changes that you disagree with or that are
8   not supported by your investigation?
9       A.   There is not.
10      Q.   And again, the next substantive change is in
11  Paragraph 17, which adds the statement that Company A, in
12  this case would be Infused (ph.), elected to contract with
13  HMA to provide CDI services under its contract with Walter
14  Reed.  Is that -- is that supported, based on your
15  investigation?
16      A.   Accurate, yes.
17      Q.   And then Paragraph 18 just clarifies that acting
18  on behalf of HMA, they, the conspirators, invoiced Company
19  A, which is Infused in this case, for those services, which
20  in turn falsely billed Walter Reed.
21      A.   Correct.
22      Q.   Is that -- and is that also supported, based on
23  your investigation?
24      A.   Yes.  Yes, it is.
25      Q.   So there are no more substantive changes in the

1    superseding indictment.  As to the investigation as a whole,
2    were a number of subpoenas issued in this case by way of
3    grand jury subpoena and a number of bank records and other
4    financial records and other records of different sorts
5    obtained by you and other agents?
6         A.   Yes.
7         Q.   Does law enforcement have a log of those subpoenas
8    prepared in connection with this case?
9         A.   Yes, we do.
10        Q.   Are they too voluminous for you bring with you
11   today?
12        A.   Yes.
13        Q.   If you needed to, could you make those records
14   available?  Or if they were requested could you make those
15   records available to the grand jury?
16        A.   Absolutely, yes.
17             MR. GARDNER:  Do the grand jurors have any
18   questions of fact for this witness?  Or if you would like we
19   can go over any of the facts in this case that you may not
20   have recalled.
21             I'm not seeing any hands, so may Agent Kimrey be
22   dismissed?
23             FOREPERSON:  Yes.
24             WITNESS:  Thank you.
25             MR. GARDNER:  Thank you.

1           (Whereupon, the witness was excused at 1:52 p.m.
2  on December 19, 2024)

FREE STATE REPORTING, INC.
Court Reporting  Transcription
D.C. Area 301-261-1902
Balt. & Annap. 410-974-0947

***C E R T I F I C A T E***

I, CHRISTOPHER MACKAY, certify that this is an accurate transcript of the notes and digital audio recording by BRADLEY WEIRICH, Court Reporter, of the testimony taken

And

the proceedings held in the case of United States v. Akbar Masood before the Grand Jury

Held in

United States District Court of Maryland on December 19, 2024.

January 8, 2025
Date

Christopher MacKay
Transcriber

Bradley Weirich
Official Reporter