IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| UNITED STATES OF AMERICA | : | |
| --- | --- | --- |
| | : | |
| v. | : | No. 8:22cr91-PX |
| | : | |
| AKBAR MASOOD, | : | |
| | : | |
| Defendant. | : | |

.......oOo.......

### REPLY IN SUPPORT OF AKBAR MASOOD'S MOTION TO DISMISS BASED ON THE GOVERNMENT'S DESTRUCTION OF EVIDENCE

The government fails to refute – and largely fails to address – Mr. Masood's showing that the Court should dismiss the charges against him because the government destroyed the four non-imaged devices at issue, including the Walter Reed Laptop seized from Ms. Jackson's home.

Instead of coming to grips with the facts in the record establishing that the destruction of the devices requires dismissal, the government's opposition (ECF 346, "Opp'n") generally ignores those facts. At the same time, it tardily discloses new actual facts about the Walter Reed Laptop, asserts purported facts about the laptop based on plainly inadmissible double hearsay from an unnamed source, and makes a number of materially incorrect statements. Here are some examples:

| Incorrect or Inadmissible Statement | Correction |
| --- | --- |
| Sylvia Koonce, the newly identified person who owned the CAC card SA Kimrey found in the Walter Reed Laptop, is "unrelated to this case." (ECF 346, Opp'n at 5 & n.2.) | Ms. Koonce was an "**Inpatient Auditor**" (Ex. A, 7/7/17 Gillespie Email); she *worked at Walter Reed* (Ex. B, 11/28/17 Walter Reed Employees.xlsx (PDF of first tab) (naming Ms. Koonce under "Inpatient Auditors WRNMMC"); and her name is in at least 250 items the government produced in this case.[1] |
| Ms. Jackson "never had credentials to access the laptop and never accessed [it]." (*Id.*) These purported new facts are based *solely* on | This is inadmissible double hearsay even if the statements are authenticated: The lawyer obviously had no personal knowledge of them |

---

[1] The purported conspiracy allegedly began "on or about December 16, 2016." (ECF 342, Second Superseding Indictment ("SSI") at 3 ¶ 12.)

1

| | |
|---|---|
| supposed statements on an unidentified date by an unidentified lawyer for her. (*Id.*) | and got them from Ms. Jackson. In contrast, SA Kimrey testified he could find the name of the CAC card's owner. |
| SA Kimrey "had no idea what was on any of the devices" and knew only that they "could be relevant." (*Id.* at 25.) | SA Kimrey's affidavit in support of the search warrant for Ms. Jackson's home says that *any* device found there can contain "crucial" exculpatory information that "exclude[s] the innocent from further suspicion" and similarly "crucial" inculpatory information. (ECF 332, Mot. at 5.) |

These tactics fail, as discussed more fully below.

The government's other efforts to defend its destruction of the Walter Reed Laptop and the other non-imaged devices are equally unavailing. The government erroneously contends that bad faith is required for the destruction of *apparently* exculpatory evidence to violate due process. The U.S. Supreme Court held over 40 years ago that a defendant need not show any level of culpability to establish a due process violation based on the destruction of such evidence. The Fourth Circuit followed and applied that holding four years ago in an opinion that remains controlling law but that the government does not cite. The government also mistakenly denies that the four devices at issue contained apparently exculpatory evidence, disregarding or attempting to change key facts the motion discusses and the import of some of the actual facts it newly discloses.

Dismissal is also required if the devices are viewed as only *potentially* exculpatory because the government acted in bad faith by destroying them and keeping this fact a secret for over two years. The government's denials of the evidence establishing its bad faith lack merit because, once again, they do not address the facts and contradict the record.

It is undisputed that Mr. Masood cannot obtain comparable exculpatory evidence from a source other than the four devices and that curing the prejudice to him from the government's due

2

process violations is therefore impossible. The Court should grant the motion and dismiss the charges against Mr. Masood with prejudice.[2]

# ARGUMENT

I. **THE GOVERNMENT'S ATTEMPTS TO AVOID DISMISSAL BASED ON ITS DESTRUCTION OF APPARENTLY EXCULPATORY EVIDENCE FAIL.**

   A. **The Government Incorrectly Asserts That Bad Faith Is Required For Its Destruction Of Apparently Exculpatory Evidence To Violate Due Process.**

No level of culpability – bad faith or otherwise – is needed for the government's destruction of *apparently* exculpatory evidence to violate due process. In *California v. Trombetta*, 467 U.S. 479 (1984), the U.S. Supreme Court decided the circumstances under which the government's destruction of "evidence that might be expected to play a significant role in the suspect's defense" violates due process. *Id.* at 488. The Court held that such destruction violates due process if the evidence's exculpatory value "was apparent before [it] was destroyed" and its nature rendered the defendant "unable to obtain comparable evidence by other reasonably available means." *Id.* at 489. The Court did *not* require *any* level of culpability for such destruction to violate due process; to the contrary, it observed that "the officers here were acting in good faith and in accord with their normal practice." *Id.* at 488. In *United States v. Johnson*, 996 F.3d 200 (4th Cir. 2021), the Fourth Circuit followed *Trombetta* and applied its holding, recognizing that it remains binding precedent. *Id.* at 206, 215-16.

Nevertheless, the government asserts that destroying "apparently exculpatory" evidence "only" violates due process "if the evidence was destroyed in bad faith." (ECF 346, Opp'n at 24.)

---

[2] This reply uses the same defined terms as the motion. Throughout this reply, unless otherwise stated, (i) quotations omit internal quotation marks, alterations, citations, and footnotes in the quoted source, (ii) all capital letters and emphases (bold font, underlining, and/or italics) are in the quoted source, and (iii) alterations within quotes are *not* in the quoted source (*i.e.*, such alterations are added).

3

This assertion is wrong. It contradicts both *Trombetta* and *Johnson*. The government claims support for the assertion from *Arizona v. Youngblood*, 488 U.S. 51 (1988), but that decision addresses evidence that "can only be said to be 'potentially useful.'" *Johnson*, 996 F.3d at 206 (quoting *Youngblood*, 488 U.S. at 57-58); (ECF 332, Mot. at 9-10 (explaining different standards that govern apparently exculpatory and potentially exculpatory evidence).

Without citing *Johnson*, the government earlier cites *United States v. Perry*, 92 F.4th 500, 513 (4th Cir. 2024), though it does not argue that *Perry* changes the governing standard. (ECF 346, Opp'n at 24.) *Perry* correctly quotes *Trombetta*'s holding on what a defendant must show to establish a due process violation based on the destruction of apparently exculpatory evidence. 92 F.4th at 513. The panel's opinion then mistakenly states, however, that "[i]n addition" a defendant "must establish that the police acted in 'bad faith' in failing to preserve the evidence." 92 F.4th at 513 (quoting *Youngblood*, 488 U.S. at 58). This statement is not only mistaken but it is also *dicta*: The *Perry* panel concluded that the defendant "cannot satisfy" either of *Trombetta*'s requirements because (i) the jury found that a bodycam video that captured footage at least as good as the video at issue contained "nothing exculpatory" and (ii) "the two videos were duplicative." *Id.* at 513-14. Moreover, the *Perry* panel could not overrule *Trombetta* or *Johnson* even if it intended to do so.

> **B.  The Government Wrongly Denies That The Four Non-Imaged Devices It Destroyed Contained Apparently Exculpatory Evidence.**

The government wrongly denies that the four devices contained apparently exculpatory evidence while ignoring or attempting to change the relevant facts.

Most notably, the government fails to come to grips with the significance of the fact that Ms. Jackson possessed the Walter Reed Laptop *at her home*, its new disclosure that Ms. Koonce's CAC was in the laptop, and SA Kimrey's testimony at the hearing on August 29, 2024. The facts that the laptop was found at that location and had a CAC belonging to Ms. Koonce – an in-patient

4

auditor who worked at Walter Reed – made it apparent this device contained information that was exculpatory as to Mr. Masood and inculpatory as to Ms. Jackson. The facts that the Walter Reed Laptop – a device *belonging to the alleged victim* – was found in Ms. Jackson's home but no comparable device was found in Mr. Masood's home or office are critically important. These facts made it apparent the laptop "might be expected to" contain information that Mr. Masood could use to show his lack of involvement in the purported conspiracy and Ms. Jackson's leadership role in it – information that would "play a significant role in [his] defense." *See Trombetta*, 467 U.S. at 488. This is especially so given SA Kimrey's representations in his affidavit about "crucial" exculpatory information for *any* device found in Ms. Jackson's home. (ECF 332, Mot. at 5.)

Unable to deny the point that the government's view of *Brady* violations necessarily entails that the materials in question contained apparently exculpatory information that is material (ECF 332, Mot. at 12), the government reiterates its attempt to explain and retract its confessions that it committed "***a Brady violation***" (*id.* at 4-5) by not producing the contents of the seized devices (ECF 346, Opp'n at 24 n.7). It first made this attempt several days after its confessions, offering a new, revisionist account of what it said unambiguously and repeatedly on the record. Specifically, the government claimed it meant only "any breach of the broad obligation to disclose exculpatory evidence" and not "a real 'Brady' violation," which requires that the suppressed evidence be material to the outcome. (ECF 259, 8/27/24 Gov't Letter at 5.) This claim makes no sense. The Court would not have ordered the parties to file expedited letter briefs on whether the case should be dismissed based on the government's confessions if "[it], the defense, and the Court all used the term 'Brady violation'" as "loosely" as it claims. (ECF 346, Opp'n at 24 n.7)

5

## II. THE GOVERNMENT FAILS TO REFUTE MR. MASOOD'S SHOWING THAT IT ACTED IN BAD FAITH AS TO ITS DESTRUCTION OF THE DEVICES AND THEREFORE VIOLATED DUE PROCESS EVEN IF THEY ARE VIEWED AS POTENTIALLY RATHER THAN ACTUALLY EXCULPATORY.

### A. The Government Errs In Contending That Bad Faith Requires A Purpose To Deprive The Defendant Of Exculpatory Evidence.

For three reasons, the government errs in suggesting that *Jean v. Collins*, 221 F.3d 656, 663 (4th Cir. 2000) (Wilkinson, J., concurring in the judgment), establishes the level of culpability that "bad faith" entails in the context of a due process claim based on the destruction of potentially exculpatory evidence. (*See* ECF 346, Opp'n at 24.)

*First*, the government mistakenly cites Judge Wilkinson's concurrence in *Jean* as if it is a majority opinion with precedential weight. The Fourth Circuit's per curiam opinion in that case states: "The judgment of the district court is hereby affirmed by an equally divided en banc court. Separate opinions follow seriatim." *Jean*, 221 F.3d at 658. The page the government quotes is part of Judge Wilkinson's concurrence on behalf of six of the 12 judges who presided. *Id.* at 663. The other six judges disagreed with Judge Wilkinson's concurrence. An opinion joined by half of an evenly split appellate court is not binding precedent. *See, e.g.*, *Neil v. Biggers*, 409 U.S. 188, 192 (1972) ("[A]n affirmance by an equally divided court is not entitled to precedential weight."); *United States v. Lee*, 943 F.2d 366, 369-70 (4th Cir. 1991) (stating that a court of appeals opinion "is not binding precedent" because it "was affirmed per curiam by an equally divided [U.S. Supreme Court]").[3]

---

[3] Mr. Masood's counsel have found no published Fourth Circuit opinion that applies Judge Wilkinson's concurrence in *Jean* to a criminal case. Some unpublished Fourth Circuit opinions have done so – but with little or no analysis, and without considering the reasons *Jean* is inapposite that are discussed in the text.

6

*Second*, Judge Wilkinson's concurrence in *Jean* addresses "when [state] police officers are liable under § 1983 for allegedly withholding exculpatory evidence from the prosecution and by extension a criminal defendant." 221 F.3d at 658. In that materially different context, Judge Wilkinson's concurrence relied on concerns about liability and federalism to justify his version of "bad faith." *See id.* at 661 ("To confer on prosecutors absolute immunity while denying to police the right to argue even bona fides would multiply exponentially litigation against even conscientious officers."); *id.* ("Making internal communications between prosecutors and police the customary subject of § 1983 litigation would thrust the federal courts deep into the operations of state prosecutors' offices, a breach of federalism principles for which the Due Process Clause of the Constitution provides no warrant."). No such concerns exist here because Mr. Masood is seeking the remedy of dismissal based on acts by federal law enforcement officers.

*Third*, the Fourth Circuit had no occasion in *Jean* to decide whether recklessness suffices to establish "bad faith" for a due process claim based on the destruction of potentially exculpatory evidence. The plaintiff in *Jean* claimed that two North Carolina police officers violated his due process rights "by failing to turn over exculpatory evidence to the prosecutor" and "allege[d] at most a negligent miscommunication between these officers and the prosecutor." 221 F.3d at 658 (Wilkinson, J., concurring in the judgment); *accord id.* at 663 (emphasizing that "what occurred here was at worst a negligent miscommunication"). Moreover, unlike Mr. Masood, the plaintiff in *Jean* "d[id] not claim that [the defendant officers] destroyed or otherwise failed to preserve the evidence that is now at issue." *Id.* at 662. Here, in contrast, it is undisputed that the government destroyed the four non-imaged devices, and the record establishes that it acted at least recklessly if not deliberately in doing so. In addition, whereas the plaintiff in *Jean* "d[id] not point to any evidence showing that the officers actually knew of the significance of [the] items" they allegedly

7

withheld from the prosecutor," *id.*, Mr. Masood has pointed to the affidavits SA Kimrey presented to obtain the search warrants to evidence his knowledge of the significance of the devices.

Contrary to the government's assertion, recklessness is sufficient to establish "bad faith" in the present context. As at least one other district court in the Fourth Circuit has held, recklessness shows the requisite "bad faith" for a due process violation based on the destruction of potentially exculpatory evidence. *United States v. Elliott*, 83 F. Supp. 2d 637, 647 (E.D. Va. 1999). The court explained that where an officer acted "contrary to" *either* "applicable policies" *or* "the common sense assessments of evidence reasonably to be expected of law enforcement officers" *or* "was so unmindful of both as to constitute the reckless disregard of both, there is a showing of objective bad faith." *Id.*

Further, it would be anomalous to decide that bad faith demands more than recklessness in the context of a due process claim for destruction of evidence given the requisite culpability in other law enforcement contexts. For example, the first prong of the *Franks* test, which addresses culpability, requires that "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *United States v. Lull*, 824 F.3d 109, 114 (4th Cir. 2016). When an officer violates *Franks* by recklessly presenting or preparing a materially false warrant affidavit, the officer necessarily acts in bad faith and *Leon*'s good-faith exception is *per se* unavailable.

      **B.**      **The Government Ignores The Facts Establishing That It Acted In Bad Faith.**

Mr. Masood has demonstrated that the government acted recklessly or intentionally as to its destruction of the four non-imaged devices and therefore acted in bad faith. In denying that Mr. Masood has established bad faith, the government ignores the facts and contradicts the record.

For instance, the government ignores SA Kimrey's testimony that he personally "pulled [the CAC card] out" of the Walter Reed Laptop, realized the laptop was not Ms. Jackson's

8

property, and determined "the CAC card belonged to somebody not associated with this investigation." (ECF 332, Mot. at 7-8.) The government further ignores SA Kimrey's testimony that for these reasons *his* "solution" was to "return" the Walter Reed Laptop to Ms. Jackson without having it imaged. (*Id.*)

Whereas the government now belatedly reveals that Ms. Koonce is the person whose CAC card was in the Walter Reed Laptop when it was seized (ECF 346, Opp'n at 5 n.2), SA Kimrey's ALERTS entries do not mention this fact – even though a CAC has its owner's photo and name on it. SA Kimrey's decision to omit Ms. Koonce's name and all other information he knew about the CAC and her from his ALERTS entries is evidence of his bad faith. The same is true of SA Kimrey's decision to incorrectly handwrite that *Ms. Jackson* was the "**owner**" of the Walter Reed Laptop on the chain of custody document for it when he returned it to her. (ECF 332, Mot. at 8.)

The government ignores all of this evidence. It does not attempt to explain why SA Kimrey omitted the information about Ms. Koonce and the CAC from his ALERTS entries or why he chose to misidentify Ms. Jackson as the owner of the Walter Reed Laptop. And it disregards his testimony that "ALERTS is the place that he would look to refresh his recollection as to what he did" and that ALERTS "would be the sole place." (*Id.*)

At the same time, the government doubles down on SA Kimrey's assertion that he did not have the Walter Reed Laptop imaged because he determined that Ms. Jackson did not own it. This assertion is frivolous and provides further evidence of SA Kimrey's bad faith. The government *ignores the plain language of the affidavit* that SA Kimrey presented to obtain a search warrant for Ms. Jackson's home. (*Id.* at 11.) The motion's discussion of this language bears repeating because it eviscerates SA Kimrey's assertion:

9

>The 3/31/22 Kimrey Affidavit states that probable cause exists to seize *any electronic device that was in Ms. Jackson's home when the warrant was executed* without suggesting her ownership of the device or lack thereof matters: "There is probable cause to believe that this forensic electronic evidence will be on ***any storage medium in*** TARGET PREMISES I [Ms. Peebles's home] and ***TARGET PREMISES 2*** [Ms. Jackson's home]."

(*Id.*) The notion that an agent acting in good faith would decide *not* to review or image an electronic device that a warrant plainly authorized the government to search and seize makes no sense. Agents like SA Kimrey, whose job is to follow prosecutors' directions to obtain evidence that inculpates or exculpates suspects, have no legitimate reason to unilaterally impose limits *beyond* those in a search warrant that one or more investigation team members prepared and a magistrate approved.

Moreover, because the owner of the Walter Reed Laptop had given control of it to Ms. Jackson, the owner had no legitimate expectation of privacy in its contents. *See Casella v. Borders*, 404 F. App'x 800, 802-04 (4th Cir. 2010) (per curiam) (holding that Fourth Amendment claim failed because § 1983 plaintiff "relinquished possession of the [cellular] phone" in question to another person and therefore "lacked a legitimate expectation of privacy in [its] contents").

In addition, SA Kimrey deliberately decided to violate AUSA Ake's express instruction as to the seized devices in two different ways: by returning the Walter Reed Laptop to a person who did *not* own it and by doing so *without* having it successfully imaged. (ECF 332, Mot. at 8, 11.) The government erroneously denies this fact by asserting, in conclusory fashion in a footnote, that the motion's discussion of it purportedly takes an "unremarkable" email exchange "out of context." (ECF 346, Opp'n at 26 n.8.) The government fails to attempt to explain *why* the email exchange is "unremarkable" or *how* the motion takes the exchange "out of context" – and it cites no evidence that contradicts the motion's discussion. (*See id.*) At the same time, the government ignores SA Kimrey's testimony that he "can't think of a reason where we would destroy evidence,

unless it was authorized within the investigation" (ECF 332 at 6), and identifies no authorization for SA Kimrey to decide to destroy the Walter Reed Laptop by returning it to Ms. Jackson.

Further, the government knew that Mr. Masood did not object to continuances "because of" what it describes as "[his] desire to review the electronic materials [*i.e.*, the seized devices] for potentially exculpatory or otherwise helpful information." (ECF 346, Opp'n at 6.) Nevertheless, the government did not ask Mr. Masood if he would consent to it returning the Walter Reed Laptop or the other non-imaged devices to Ms. Jackson and Ms. Peebles. Instead, it covertly destroyed the devices and concealed the fact that it did so from both the Court and Ms. Masood for years, until late August 2024.

Finally the government also acted in bad faith under the standard it quotes from Judge Wilkinson's concurrence in *Jean*. In explaining what "bad faith" means, that concurrence says it "must be established on the basis of evidence, including among other things the nature of the withheld material, that would negate any negligent or innocent explanation for the actions on the part of the police." *Jean*, 221 F.3d at 663. The government's knowledge of the nature of the destroyed devices – particularly the Walter Reed Laptop – "negate[s] any negligent or innocent explanation for [its] actions." *Id.* Further, as Judge Bennett observed in a civil case in holding that the evidence supported the jury's verdict, according to Judge Wilkinson's concurrence in *Jean*, "the 'concealment, doctoring, or destruction' of evidence" is a relevant consideration for whether an officer acted in "bad faith." *Burgess v. Baltimore Police Dep't*, 300 F. Supp. 3d 696, 704 (D. Md. 2018) (quoting *Jean*, 221 F.3d at 662-63). Here, the government concealed evidence (the contents of the four devices at issue and what it did with those devices), SA Kimrey doctored evidence (the inaccurate chain of custody document for the laptop and his materially incomplete ALERTS entries), and the government destroyed those devices.

## CONCLUSION

For the foregoing reasons and those stated in the motion, the Court should grant the motion and dismiss the charges against Mr. Masood with prejudice.

January 14, 2025                                      Respectfully Submitted,


                                                      /s/ Joshua D. Greenberg
                                                      Joshua D. Greenberg
                                                      THE JOSH GREENBERG LAW FIRM PLLC
                                                      1717 K Street, NW, Suite 900
                                                      Washington, DC 20006
                                                      (202) 422-0809
                                                      josh@joshgreenberglawfirm.com

                                                      Eugene Gorokhov
                                                      BURNHAM & GOROKHOV, PLLC
                                                      1634 I Street NW, Suite 575
                                                      Washington, DC 20006
                                                      (202) 386-6920
                                                      eugene@burnhamgorokhov.com

                                                      Daniel Goldman
                                                      LAW OFFICE OF DANIEL GOLDMAN, PLLC
                                                      421 King Street, Suite 505
                                                      Alexandria, Virginia 22314
                                                      (202) 677-5709
                                                      dan@dangoldmanlaw.com

                                                      *Counsel for Defendant Akbar Masood*


## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of January, 2025, a true and accurate copy of the foregoing document and any attachments thereto was served via CM/ECF on all counsel of record.

                                                      /s/ Joshua D. Greenberg
                                                      Joshua D. Greenberg